UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAURICE SESSUM,<br><br>       Petitioner,<br><br>   -v.-<br><br>UNITED STATES OF AMERICA,<br><br>       Respondent. | 18 Civ. 6222 (KPF)<br>[related case 15 Cr. 667-6 (KPF)]<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

  In July 2018, Petitioner Maurice Sessum filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence that had been imposed one year earlier, in July 2017, in the criminal case of *United States* v. *Sessum*, No. 15 Cr. 667-6 (KPF).  At the time the § 2255 motion was filed, the Court had adjourned Mr. Sessum's surrender date for medical reasons, ultimately ordering that he surrender on or before February 22, 2019.  Two months later, on April 30, 2019, Mr. Sessum moved for bail pending the resolution of his § 2255 motion.  For the reasons set forth in the remainder of this Order, his request is denied.

## BACKGROUND

  Maurice Sessum and more than one dozen others were charged in 2015 with wire fraud and conspiracy to commit wire fraud arising out of their conduct at the Buffalo-based debt collection company Four Star Resolution and several related entities ("Four Star").  Evidence presented to the Court over the course of numerous sentencing proceedings confirmed that Mr. Sessum was the co-owner, Chief Financial Officer, and Chief Operating Officer of Four

Star; as a result of his positions in the company, the conduct he oversaw, and his own conduct, Mr. Sessum was one of the most culpable of the defendants charged.

On November 17, 2016, on the eve of trial, Mr. Sessum pleaded guilty to the operative indictment pursuant to a plea agreement with the Government in which, among other things, Mr. Sessum waived his right to appeal or to file a collateral challenge to any sentence of imprisonment within or below the stipulated range under the United States Sentencing Guidelines ("U.S.S.G" or "Guidelines") of 151 to 188 months' imprisonment. During the plea colloquy, the Court allocated Mr. Sessum, in detail, on all of his waivers.

At sentencing on July 12, 2017, the Court varied downwardly from the Guidelines range and imposed an aggregate term of 90 months' imprisonment. In contravention of his plea agreement with the Government, Mr. Sessum filed a notice of appeal shortly after his sentencing, though he subsequently moved to withdraw the appeal. *See United States* v. *Lavin (Sessum)*, No. 17-2254 (motions filed May 1, 2018, and July 19, 2018). His renewed withdrawal motion was granted by order dated July 19, 2018.

While his appeal was pending, on July 9, 2018, Mr. Sessum filed the instant § 2255 motion. *See Sessum* v. *United States*, No. 18 Civ. 6222 (KPF). At that time, Mr. Sessum was represented by counsel, but shortly thereafter, counsel moved to be relieved from this matter and was relieved by the Court. In July, August, October, and December 2018, and again in January 2019, the Court granted Mr. Sessum's motions for adjournment of his surrender date.

By endorsement dated February 14, 2019, the Court confirmed that it would grant no more adjournments, and that Mr. Sessum would be required to surrender on or before February 22, 2019. With the assistance of new counsel, Mr. Sessum now moves for bail pending resolution of his § 2255 motion.

## APPLICABLE LAW

Federal courts have the "inherent power to enter an order affecting the custody of a habeas petitioner who is properly contesting the legality of his custody." *Ostrer* v. *United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978); *see also Mapp* v. *Reno*, 242 F.3d 221, 226 (2d Cir. 2001). However, "[t]he standard for bail pending habeas litigation is a difficult one to meet." *Grune* v. *Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990); *see generally Illarramendi* v. *United States*, 906 F.3d 268, 271 (2d Cir. 2018). This power may only be exercised in special cases. *Mapp*, 242 F.3d at 226. The Second Circuit had admonished district courts that a petitioner challenging his sentence "should be granted bail only in unusual cases or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Ostrer*, 584 F.2d at 596 n.1 (internal quotation marks and citations omitted); *see also Mapp*, 241 F.3d at 226 n.5 ("Bail is appropriate pending a decision in a habeas case only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success[.]" (internal quotation marks and citation omitted)).

Though Mr. Sessum refers the Court to 18 U.S.C. § 3143(b), that provision by its terms applies to motions for bail pending "an appeal or a

3

petition for a writ of certiorari." Sister courts in this District have held that "the standard for release on bail under 28 U.S.C. § 2255 is even higher than under 18 U.S.C. § 3143(b)," requiring "a demonstrated likelihood that the petition will prevail, based upon claims of a substantial nature upon which the petitioner has a high probability of success ... so that victory for petitioner can be predicted with confidence." *United States* v. *Yarmoluk*, No. 96 Cr. 863 (JSR), 1997 WL 642564, at *1 (S.D.N.Y. Oct. 17, 1997) (internal quotation marks omitted); *see also, e.g.*, *Beras* v. *United States*, No. 05 Civ. 2678 (BSJ), 2012 WL 2148986, at *1 (S.D.N.Y. June 12, 2012) ("Judges in this district have ruled that this high hurdle requires that the petitioner show a 'demonstrated likelihood the petition will prevail' such that the petitioner has a 'high probability of success.'").[1]

## DISCUSSION

Mr. Sessum has not satisfied this substantial burden. His principal claim for relief is that he received the ineffective assistance of counsel in connection with his plea and sentence. Such a claim is analyzed under the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984):

---

[1]    *See also United States* v. *Shulaya*, No. 17 Cr. 350 (LAP), 2019 WL 1932581, at *7-8 (S.D.N.Y. Apr. 30, 2019) (citations omitted):

> In determining the propriety of granting bail, courts consider three factors:
>
> (1) Are substantial claims set forth in the habeas corpus petition?
>
> (2) Is there a demonstrated likelihood the petition will prevail?
>
> (3) Are there extraordinary circumstances attending the petitioner's situation which would require the grant in order to make the writ of habeas corpus effective, presumably if granted?

(i) he "must show that counsel's performance was deficient" to such a degree that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id.* at 687, 690; and (ii) he must show "that the deficient performance prejudiced the defense," *id.* at 687, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. *See generally Gonzalez* v. *United States*, 722 F.3d 118, 130-31 (2d Cir. 2013).

In evaluating the first prong, '[j]udicial scrutiny ... must be highly deferential,'" and the petitioner must "overcome the 'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell* v. *Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689) (alteration in original); *see Cullen* v. *Pinholster*, 563 U.S. 170, 196 (2011) (recognizing that counsel is accorded a "strong presumption of competence"). Putative errors on the part of counsel must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'" *Lindstadt* v. *Keane*, 239 F.3d 191, 199 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 695-96).

In order to satisfy the prejudice prong with respect to an ineffectiveness claim focusing on a plea of guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill* v. *Lockhart*, 474 U.S. 52,

5

59 (1985). By contrast, satisfaction of the prejudice prong with respect to a claim of ineffectiveness at sentencing requires the defendant to show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence. *Cf. Glover* v. *United States*, 531 U.S. 198, 203 (2001) ("Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance." (citations omitted)).

Though the Court will consider with care all of Mr. Sessum's arguments at the time it resolves his § 2255 motion, its review to date does not disclose a basis for the extraordinary relief of bail. Mr. Sessum complains first that his prior counsel did not understand basic principles of law, which deficiencies caused him to counsel Mr. Sessum to enter into a plea agreement with the Government that stipulated to an outsized loss amount and an unwarranted vulnerable victim enhancement. (*See* Pet. Bail Br. 4-7). The Court disagrees. On the record developed over the course of multiple sentencing proceedings, the Court found that Mr. Sessum was at the apex of the charged conspiracy, and that he was therefore liable for all reasonably foreseeable fraudulent conduct within the scope of his agreement. *See generally United States* v. *Studley*, 47 F.3d 569, 574 (2d Cir. 1995) (concluding that in order to hold a defendant accountable for jointly undertaken criminal activity, the district court must find: "1) that the acts were within the scope of the defendant's agreement and 2) that they were foreseeable to the defendant"); *see also*

6

U.S.S.G. § 1B1.3(a)(1)(B).  Fraudulent conduct of many types permeated the efforts of Four Star's employees to collect more than $31 million from the debtor-victims, only a portion of which represented receivables that Four Star's management had purchased from others.  Moreover, the Government presented considerable evidence that Mr. Sessum, and the many employees he supervised, were aware of the vulnerable nature of certain of the victims.  (*See, e.g.*, Sessum PSR ¶¶ 31, 35, 65-86, 157).  *See United States* v. *Burke*, 754 F. App'x 58, 60 (2d Cir. 2019) (summary order) ("The Guidelines define 'vulnerable victim' as 'a person (A) who is a victim of the offense of conviction … ; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.'" (quoting U.S.S.G. § 3A1.1(b), cmt. n.2)); *see also United States* v. *Patasnik*, 89 F.3d 63, 72 (2d Cir. 1996) (upholding vulnerable victim enhancement where financial desperation of victims "made them particularly susceptible to [the defendants'] carefully crafted promises").

    According to Mr. Sessum, counsel's ineffectiveness extended into the sentencing proceedings, where counsel is criticized for refraining from challenging the Government's aggregate loss figure.  (Pet. Bail Br. 7-10).  Again, on the record currently before it, the Court disagrees.  The loss figure of more than $31 million included both actual and intended loss.  (Sessum PSR ¶ 173). The Court was at all times aware, from the Presentence Investigation Reports and from the parties' pretrial and sentencing submissions, that a portion of this figure reflected actual debts owed by the consumer-victims.  (*See, e.g.*,

Sessum PSR ¶¶ 19 ("Employees working on behalf of the Company attempted to collect actual or purported credit card and payday loan debts from victims nationwide using various misrepresentations."), 82 ("During the period of the charged conspiracy, from 2010 through February 2015, Four Star received $31,475,156.96 from consumer victims through payment processors.")). Precisely for this reason, Mr. Sessum's prior counsel argued at sentencing that the loss figure overstated the offense: "While Mr. Sessum accepted responsibility for the $31,000,000.00 loss figure, it is doubtful that all of the collector attempts used improper collection methods in order to induce the debtors to pay the debts. As well, the 22 level enhancement is a significant factor leading to a much more serious guideline calculation than without it." (Dkt. #394 at 16; *see also id.* at 18 ("We also believe that the $31,000,000.00 loss amount overstates his own circumstances.")). The Government countered those arguments. (*See* Dkt. #397 at 17-18). Most significantly, for purposes of the instant motion, the Court considered defense counsel's arguments with a complete understanding of Four Star's operations and, as a result of these and other of counsel's arguments, varied downward significantly from the applicable Guidelines range. (Dkt. #462 at 55 ("And I have been asked to consider and counsel has very thoughtfully suggested these cases [for] my review, cases like *Adelson* and others that have really caused district judges to question whether loss is an effective proxy for culpability under the guidelines. I'm well aware of the *Adelson* case and cases that have followed it.")). The

8

Court is quite confident that it would not have imposed a lower sentence on Mr. Sessum than the one it ultimately did impose.

When it resolves the § 2255 motion, the Court will review in greater detail each of Mr. Sessum's arguments. However, those presented in connection with the instant bail motion do not satisfy the very stringent standards set by the Supreme Court and the Second Circuit. Accordingly, Mr. Sessum's motion for bail is denied.

SO ORDERED.

Dated: May 8, 2019
       New York, New York

*signature*

KATHERINE POLK FAILLA
United States District Judge