UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>MAURICE SESSUM,<br>                                    Defendant. | 15 Cr. 667-6 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant Maurice Sessum, who is currently incarcerated at the satellite camp ("FPC") adjacent to the United States Penitentiary ("USP") in Lewisburg, Pennsylvania, has applied for compassionate release, in the form of immediate release to home confinement, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #579, 590). In brief, Mr. Sessum contends that he is at an increased risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of pre-existing medical conditions. The Government opposes this motion. (Dkt. #582, 592). As set forth in the remainder of this Order, the Court denies Mr. Sessum's motion for compassionate release.

## BACKGROUND

This case has an extensive procedural history, which has been detailed by the Court in a prior opinion incorporated herein by reference. *See Sessum v. United States*, No. 15 Cr. 667-6 (KPF), 2020 WL 1243783 (S.D.N.Y. Mar. 16, 2020). In brief, Mr. Sessum and more than one dozen others were charged in 2015 with wire fraud and conspiracy to commit wire fraud arising out of their conduct at the Buffalo-based debt collection company Four Star Resolution and several related entities ("Four Star"). (Dkt. #14). Evidence presented to

the Court over the course of numerous sentencing proceedings confirmed that Mr. Sessum was the co-owner, Chief Financial Officer, and Chief Operating Officer of Four Star; as a result of his positions in the company, the conduct he oversaw, and his own conduct, Mr. Sessum was one of the most culpable of the defendants charged. (*See generally* Revised Final Presentence Investigation Report ("PSR") ¶¶ 18-86).

On November 17, 2016, on the eve of trial, Mr. Sessum pleaded guilty pursuant to a plea agreement with the Government in which, among other things, Mr. Sessum waived his right to appeal or to file a collateral challenge to any sentence of imprisonment within or below the stipulated range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 151 to 188 months' imprisonment. (Dkt. #334 (plea transcript)). At sentencing on July 12, 2017, the Court varied downwardly substantially from the Guidelines range and imposed an aggregate term of 90 months' imprisonment. (Dkt. #402 (judgment), 462 (sentencing transcript)).

Though Mr. Sessum was sentenced in July 2017, he did not surrender to serve his sentence until February 2019, pursuant to the Court's grant of numerous extension requests predicated on various medical issues. (*See, e.g.*, Dkt. #439, 458, 474, 492, 514, 531, 535, 541, 551). Based on the docket entries during this time, it would appear that Mr. Sessum used this extended release period not merely to address medical issues, but also to seek vacatur of his sentence and/or continuation of bail. To begin, in contravention of his plea agreement with the Government, Mr. Sessum filed a notice of appeal, which he

subsequently moved to withdraw. *See United States* v. *Lavin (Sessum)*, No. 17-2254 (2d Cir. July 19, 2018). He then filed two motions to vacate his sentence pursuant to 28 U.S.C. § 2255, which motions were consolidated and ultimately denied by the Court by order dated March 16, 2020. *See Sessum*, 2020 WL 1243783. And during the pendency of these § 2255 motions, Mr. Sessum sought bail, which application this Court also denied. (Dkt. #563).

One month after the Court denied Mr. Sessum's consolidated § 2255 motions, he moved for compassionate release. (Dkt. #579). The Court denied the application without prejudice, citing his failure to exhaust administrative requirements. (Dkt. #584). In relevant part, Mr. Sessum argues for immediate release "based on his preexisting medical condition, his favorable analysis under the Section 3553(a) factors, in conjunction with his classification as a non-violent offender, his overall remorse and functional release plan." (Dkt. #590 at 2). After his application was denied by the Bureau of Prisons ("BOP"), Mr. Sessum renewed his motion with this Court (Dkt. #590), and the Government renewed its opposition (Dkt. #592).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a

4

given case, without deference to the determination made by the BOP. *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020). In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

## DISCUSSION

Mr. Sessum's motion is now properly before the Court, his administrative remedies having been exhausted when the BOP denied his request on or about May 11, 2020. (Dkt. #592 at 1). The issue at hand is whether Mr. Sessum has identified "extraordinary and compelling reasons" warranting his release. The Court finds that he has not.

As noted, Mr. Sessum argues that the conditions of his incarceration at FPC Lewisburg place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the nature of his confinement at the facility, his existing medical conditions, and the claimed inability of prison staff to handle the outbreak. The Court recognizes that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons. *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Kerrigan*, No. 16 Cr. 576 (JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (collecting cases). This Court aligns itself with those courts that

have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant.  In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Sessum has not demonstrated the existence of extraordinary and compelling circumstances in this case.  Mr. Sessum is 43 years old, which would otherwise place him at a comparatively low risk of hospitalization or death from COVID-19.  *See* Weekly Updates by Select Demographic and Geographic Characteristics, CENTER FOR DISEASE CONTROL, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex

(accessed May 30, 2020). Mr. Sessum focuses, however, on his putative co-morbidities:

> [T]he BOP's medical records confirm that Sessum suffers from diabetes, uncontrollable hypertension, spinal stenosis, heart palpitations, scoliosis, high cholesterol, sleep apnea and morbid obesity. These conditions, individually, are all triggers for contraction of Coronavirus and collectively increase the probability of contraction exponentially. Even worse, these preexisting medical conditions create a greater probability that not if, but when the contraction occurs, that death is more likely than contraction by persons with … stronger immune systems.

(Dkt. #590 at 3). The Court has reviewed with care Mr. Sessum's BOP medical records, which are considerable, and makes the following observations: There is some documentation for each of the conditions listed in the above paragraph, but the vast majority of Mr. Sessum's medical consultations with BOP staff have concerned his concededly serious spinal issues, which do *not* render him more susceptible to contracting the virus or to experiencing a more severe reaction if infected. What is more, with respect to those co-morbidities identified by the CDC as creating an elevated risk, which include hypertension, diabetes, high cholesterol, and morbid obesity, the Court notes that Mr. Sessum has worked successfully with BOP medical professionals to manage those conditions. *Cf.* CENTERS FOR DISEASE CONTROL AND PREVENTION, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (accessed May 31, 2020) ("People of all ages with underlying medical conditions, *particularly if not well controlled*...." (emphasis added)).

There is nothing to suggest that Mr. Sessum has been unable to care for himself or has been neglected by FPC Lewisburg medical personnel. Quite to the contrary, Mr. Sessum appears to have received appropriate medical care while incarcerated. *See, e.g., Brady*, 2020 WL 2512100, at *3-4 (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable and managed in BOP facility); *United States* v. *Garcia*, No. 18 Cr. 802 (CM), 2020 WL 2468091, at *5-6 (S.D.N.Y. May 13, 2020) (denying compassionate release to defendant with asthma, hypertension, and heart conditions housed in facility with 40 documented cases of virus).

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities. *See, e.g., United States* v. *Park*, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020). For its part, this Court has scrutinized the BOP's Pandemic Influenza Plan, *see* https://www.bop.gov/coronavirus/ (last accessed May 31, 2020), as well as the BOP's listing of confirmed cases among inmates and staff at each facility. As of the date of this Order, the BOP has identified no current cases of COVID-19 among staff or inmates at FPC Lewisburg.[1] The Court concludes on balance that the danger that Mr. Sessum faces from infection with COVID-19, even accounting for his medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate release. *Cf. United States* v.

---

[1] The same BOP website recites one staff member at the United States Prison at Lewisburg as having recovered from the coronavirus, though it is unclear whether this person had contacts with the camp.

8

*Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Sessum's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). As the Court noted in resolving Mr. Sessum's § 2255 motion earlier this year:

> From at least 2010 until February 2015, Sessum was a co-owner, Chief Executive Officer, and President of the Buffalo-based debt collection company Four Star Resolution ("Four Star"), as well as related entities. Together with co-owner Travell Thomas, Sessum was responsible for managing Four Star's day-to-day operations, finances, bank accounts, hiring and termination of employees, and solicitation of consumers to collect debts.
>
> Specifically, Sessum oversaw four debt collection offices operated by Four Star in Buffalo. He managed a team of more than a dozen managers, who in turn oversaw dozens of debt collectors. As owner and president of Four Star, Sessum drafted, approved, and disseminated collection scripts that contained a variety of misrepresentations and instructed his collectors to make those misrepresentations to consumers over the phone. Sessum participated in regular management meetings in which he discussed, edited, and approved scripts containing misrepresentations and arranged for

9

those scripts to be disseminated to collectors on the collection floor.

As part of the scheme, Sessum routinely and falsely inflated the balances of debts owed by consumers in Four Star debt collection software so that Four Star's debt collectors could collect more money from the victims than the victims actually owed, a practice known within the company as "overbiffing" or "juicing" balances. Sessum, with Thomas, also organized "mailing campaigns" that involved the dissemination of false and fraudulent mailers to consumers throughout the United States. As Sessum and Thomas knew, the mailers included fake court documents and affidavits — purportedly sent on behalf of courts and government agencies — that falsely threatened the debtors that they would be sued, prosecuted, or otherwise haled into court if they did not repay their debts. Sessum and Thomas together reviewed and approved the mailers and arranged for their dissemination by mail across the country.

As an additional part of the scheme, Sessum organized training sessions in which collectors were trained on how to make misrepresentations over the phone to consumers. At one of Four Star's collection centers, Sessum arranged for a manager to appear in person to train collectors on the debt collection technique known as "serving," in which collectors call consumers on the phone, pretending to be process servers, and threaten that the debtors will be served with civil or criminal process imminently if they do not repay the debt. Sessum attended the training sessions.

Reflective of the culture of fraud at Four Star, Sessum regularly received complaints from the Better Business Bureau, state attorneys general, the Consumer Financial Protection Bureau, and other state and federal law enforcement agencies, as well as lawsuits, regarding Four Star's abusive debt collection practices. Sessum and others at Four Star disregarded these complaints and, at times, submitted false and misleading responses to agencies to avoid law enforcement scrutiny.

*Sessum*, 2020 WL 1243783, at *1-2 (internal citations omitted).  Even today, the Court is not convinced that Mr. Sessum appreciates the seriousness of his conduct:  Mr. Sessum repeatedly advises the Court that he is a non-violent offender, a proposition with which the Court has no serious dispute, but he has utterly failed to show remorse for this most serious of crimes, and thus the Court's concerns regarding his potential for recidivism remain.  It would undercut the § 3553(a) factors for the Court to allow Mr. Sessum to serve just 14 months of a 90-month sentence.  Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Sessum's application based on its contemporaneous consideration of the § 3553(a) factors.[2]

## CONCLUSION

For the foregoing reasons, Defendant Maurice Sessum's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  The Clerk of Court is directed to terminate the motion at docket entry 590.

SO ORDERED.

Dated: June 1, 2020
New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[2]  To the extent he has not done so already, Mr. Sessum can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP.  The decision to grant that relief, however, is reserved to the discretion of the BOP.

*Sent by First Class Mail to:*
Maurice Sessum
#24456-055, Unit-2
Federal Prison Camp
P.O. Box 2000
Lewisburg, PA 17837