UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v.- | 15 Cr. 667-6 (KPF) |
| MAURICE SESSUM, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

This Order resolves Defendant Maurice Sessum's current motion for compassionate release, in the form of release from home confinement to supervised release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. #645 (defense opening brief); Dkt. #656-1 (defense reply brief)). In so doing, the Court incorporates by reference the factual and procedural histories and legal analyses contained in its prior written decisions denying (i) Mr. Sessum's motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255, *see Sessum* v. *United States*, Nos. 18 Civ. 6662 (KPF) and 15 Cr. 667-6 (KPF), 2020 WL 1243783 (S.D.N.Y. Mar. 16, 2020) (Dkt. #575) ("*Sessum I*"); (ii) Mr. Sessum's prior compassionate release motion, *see United States* v. *Sessum*, No. 15 Cr. 667-6 (KPF), 2020 WL 2836781 (S.D.N.Y. June 1, 2020) (Dkt. #584) ("*Sessum II*"); and (iii) his motion for reconsideration of that motion, *United States* v. *Sessum*, No. 15 Cr. 667-6 (KPF), 2020 WL 6392817 (S.D.N.Y. Oct. 30, 2020) (Dkt. #616 ("*Sessum III*"); *see also* Dkt. #641 (denying as moot Mr. Sessum's renewed motion for compassionate release in light of transfer to home confinement)). For the reasons set forth in the remainder of this Order, the Court denies Mr. Sessum's current motion for compassionate release.

## A.  The Court Denies Mr. Sessum's Motion for Compassionate Release

### 1.  Applicable Law

Since the Court's last consideration of the merits of Mr. Sessum's compassionate release arguments, the Second Circuit has provided additional guidance to district courts that this Court summarizes here.  Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act (the "FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*; *cf. United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (discussing circumstances resulting in waiver or forfeiture of the exhaustion requirement).

When considering an application under Section 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order).  "The defendant has the burden to show he is entitled to a sentence reduction."  *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399,

at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has offered the following guidance to courts in evaluating compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see* [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed … to provide the defendant with … correctional treatment in the most effective manner";

3

>and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what can qualify as "extraordinary and compelling reasons"). The court's discretion includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

### 2. Analysis

In May 2022, Mr. Sessum was released to home confinement on account of various medical conditions; the Court understands from BOP that Mr. Sessum resides in his home in Buffalo, New York, and is supervised by BOP's Residential Reentry Management Field Office in Pittsburgh, Pennsylvania ("RRM Pittsburgh"). In addition to periodic reporting obligations at RRM Pittsburgh, the Court understands that the conditions of Mr. Sessum's home confinement include a requirement that he obtain advance permission for all appointments outside his home, including medical appointments, employment, and religious observances.

4

### a. Mr. Sessum Arguably Has Not Exhausted His Administrative Remedies

The parties first dispute whether Mr. Sessum has properly exhausted his administrative remedies. (*Compare* Dkt. #654 at 5-6 (Government arguing that Mr. Sessum has not exhausted his remedies at BOP), *with* Dkt. #645-1 at 2 (Mr. Sessum arguing that because he is not housed at a BOP facility, exhaustion would be futile)). Curiously, neither side cites to the Second Circuit's controlling decision in *United States* v. *Saladino*, 7 F.4th 120, 121-24 (2d Cir. 2021) (per curiam), in which the Court held that the statutory exhaustion requirement is not jurisdictional, but rather is a claim-processing rule that may be waived or forfeited by the Government.[1] Conversely, "[a] district court ... may not excuse a defendant's failure to comply at all with § 3582(c)(1)(A)'s mandatory exhaustion requirement if the government properly invokes it." *United States* v. *Diaz*, No. 90 Cr. 861 (KMW), 2022 WL 17090613, at *2 (S.D.N.Y. Nov. 21, 2022) (citing *United States* v. *Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *5 (S.D.N.Y. Apr. 14, 2020)).

The Government has filed a supplemental letter brief (Dkt. #655) explaining that one of Mr. Sessum's requests for home confinement, filed in July 2020, included as well a request for compassionate release; the request

---

[1] Though the Second Circuit has not resolved the issue of whether district courts have the ability to waive the exhaustion requirement in certain circumstances, Judge Menashi argued in his concurring opinion in *Saladino* that "although § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, it remains a mandatory claim-processing rule that is not subject to equitable exceptions. The district court thus correctly determined that it lacked discretion to excuse Saladino's failure to exhaust over the government's objection." *United States* v. *Saladino*, 7 F.4th 120, 127 (2d Cir. 2021) (Menashi, J., concurring).

5

was timely denied by BOP and not appealed by Mr. Sessum.  *See Saladino*, 7 F.4th at 121 ("Still, the newly amended provision permits an inmate to move for compassionate release only 'after the [inmate] *has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [inmate's] behalf* or the lapse of 30 days from the receipt of such a request by the warden of the [inmate's] facility, whichever is earlier.'" (emphasis added) (citing 18 U.S.C. § 3582(c)(1)(A))).  Because (i) Mr. Sessum appears not to have fully exhausted his remedies under the FSA and (ii) the Government has not waived any objections based on exhaustion, the Court arguably need not consider the merits of his motion.  *See Keitt*, 21 F.4th at 73.

        **b.**    **Mr. Sessum Has Not Demonstrated Extraordinary and Compelling Reasons for Compassionate Release**

For reasons of judicial efficiency, the Court has determined to consider, and to deny, Mr. Sessum's motion for compassionate release.  In short, Mr. Sessum has not presented "extraordinary and compelling" reasons for his early release from home confinement.  In this regard, the Court substantially agrees with the analysis presented by the Government.  (Dkt. #654 at 5-9).  Mr. Sessum offers several arguments for compassionate release in his submissions.  In his reply brief, however, Mr. Sessum identifies as his "primary contention" the arguments that (i) the terms of his home confinement foreclose him from "tak[ing] the necessary medication due to the restrictions of the halfway house rules on the type of medications that can be taken, which would alleviate the pain," and (ii) "proper medication would allow him to manage the pain and obtain gainful employment and earn income that his family needs to live on."

6

(Dkt. #656-1 at 3). The Court will address each of his arguments in turn. It pauses here to observe simply that many of Mr. Sessum's arguments for release to supervised release overlook the fact that he is on home confinement, and not incarcerated, a fact that distinguishes his case from many of the cases on which he relies.

Mr. Sessum makes much of his medical issues, including his prior surgical history and certain contemplated surgical procedures; indeed, he argues that "[b]ecause [he] went to prison after [his back, knee, and spinal surgeries], there was no real recovery time at home." (Dkt. #645-1 at 6). Mr. Sessum's memory may be short, but the Court's is not: While the Court sentenced Mr. Sessum in July 2017, it permitted him to remain at liberty for nearly two years, until February 2019, precisely so that he could address his various medical issues. (*See, e.g.*, Dkt. #439, 458, 474, 492, 514, 531, 535, 541, 551). And, as this Court noted previously, *see Sessum II*, 2020 WL 2836781, at \*1, Mr. Sessum used at least part of that time to file motions for bail and for vacatur of his sentence in contravention of his plea agreement. What is more, after Mr. Sessum surrendered to BOP, this Court engaged in frequent communications with staff at the Federal Prison Camp in Lewisburg, Pennsylvania ("FPC Lewisburg"), in order to ensure that Mr. Sessum's medical needs were met — which communications resulted, at least in part, in Mr. Sessum's eventual placement on home confinement. Given these facts, the Court finds it odd for Mr. Sessum to rely on the compassionate release decisions he cites at pages 8 and 9 of his brief (Dkt. #645-1 at 8-9); those cases

involved incarcerated defendants, and not defendants on home confinement like Mr. Sessum.

This Court has reviewed with care all of Mr. Sessum's medical records submitted by BOP, as well as more current records submitted by Mr. Sessum along with the instant motion. From the records it has, the Court concludes that Mr. Sessum has received appropriate medical treatment both while incarcerated at FPC Lewisburg and while on home confinement. The Court here pauses to address certain discrete related claims advanced by Mr. Sessum in his motion papers:

- To the extent that Mr. Sessum claims extraordinary and compelling circumstances in the fact that he served a portion of his sentence in a carceral setting during the COVID-19 pandemic (Dkt. #645-1 at 2-4), the Court disagrees, noting that (i) thousands of other federal inmates also served prison terms during the pandemic; (ii) Mr. Sessum received appropriate medical care while at FPC Lewisburg; and (iii) Mr. Sessum was released on home detention when BOP determined that such placement was preferable to address Mr. Sessum's medical needs.

- To the extent that Mr. Sessum disputes BOP or RRM restrictions on the pain medications he can take (Dkt. #645-1 at 5, 7-8), the Court does not believe itself competent to challenge, much less interfere with, BOP's pharmaceutical policies. The Court also understands why BOP might perceive administrative or supervision-related difficulties occasioned by defendants' use of opiates and/or medical marijuana. On this record, compassionate release is not warranted merely because Mr. Sessum can identify more potent pain relieving medications that fall outside of BOP's national formulary. *See United States* v. *Mejia*, No. 18 Cr. 557 (VSB), 2021 WL 2554593, at *5 (S.D.N.Y. June 22, 2021) (denying compassionate release for defendant with persistent abdominal pain, where "Mejia's medical records suggest that, on balance, the medical

    department responded to his complaints and provided adequate care").

- Finally, to the extent that Mr. Sessum claims extraordinary and compelling circumstances in his failure to participate in FPC Lewisburg's Residential Drug Abuse Program ("RDAP") (Dkt. #645-1 at 4), the Court notes that the argument that Mr. Sessum would have successfully completed the program and received a reduction in his sentence is too speculative to warrant the relief he seeks. *Cf. United States* v. *Padilla*, No. 18 Cr. 454-6 (KPF), 2020 WL 3958790, at *1 (S.D.N.Y. July 13, 2020) (rejecting argument that compassionate release was warranted because had the Court known of unavailability of RDAP during the COVID-19 pandemic, it might have imposed a lower sentence).

In short, Mr. Sessum has failed to identify extraordinary and compelling circumstances warranting his release from home confinement.

### 3. The Section 3553(a) Factors Counsel Against Compassionate Release

As a third, separate basis for denial, the Court finds that the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Sessum's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C). Mr. Sessum engaged over a period of years in a wide-ranging debt collection scheme that defrauded approximately 10,000 people of nearly $32 million. (Presentence Investigation Report ("PSR") ¶¶ 157, 167). The Court specifically noted Mr. Sessum's reluctance to accept

9

responsibility at his sentencing, and his reticence has not changed in the ensuing years. (*See, e.g.*, Dkt. #462 (sentencing transcript) at 53 ("Now, I accept the fact that Mr. Sessum didn't [originate] the debt collection scheme and I accept that that came from [Travell] Thomas. But I also, I can't quite agree with defense counsel that Mr. Sessum's misconduct was acquiescing and not turning away. I do think there was more proactive behavior here. I think it was unfortunate [that] it got worse the deeper he got in.")).

Mr. Sessum has served only a modest portion of his term of imprisonment in a carceral setting, and to grant his compassionate release motion on this record would undercut the balance of the Section 3553(a) factors that the Court employed at his sentencing. Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Sessum's application based on its consideration of the Section 3553(a) factors.

**B.    The Court Will Not Consider Mr. Sessum's Request for Recalculation of His Sentence**

Commingled with Mr. Sessum's compassionate release request is his objection to BOP's calculation and application of time credits accrued under programs authorized under the FSA, including the Evidence-Based Recidivism Reduction Program ("EBRR"). (Dkt. #645-1 at 4-5). According to Mr. Sessum, "he is due approximately 11 months applied toward his halfway house time," which would result in a revised projected release date of October 2023. (*Id.*). Mr. Sessum contends that BOP has lagged in applying these credits to his sentence, or, worse yet, has refused to apply those credits to his sentence

10

because of his release on home confinement.  (*Id.* at 9).  According to BOP records, Mr. Sessum has received all of the credits to which he is currently entitled, and has a current projected release date of July 11, 2024.  (*Id.* at 5).

Mr. Sessum asks this Court to "take the remaining properly calculated time remaining in the halfway house and transfer it to extend his Supervised Release, which will then allow him to get the proper medication and free him from the physical and mental pain he is suffering."  (Dkt. #645-1 at 10).  But, as the Government notes, a compassionate release motion is an inappropriate vehicle to challenge sentence credits.  Instead, Mr. Sessum must file a petition pursuant to 28 U.S.C. § 2241 in the district where he is serving his sentence (in this case, the Western District of New York) in order to challenge the execution of his sentence, including the computation of sentence credits.  *See, e.g.*, *Levine* v. *Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (finding that "execution of a sentence ... is properly filed pursuant to § 2241," which includes "matters such as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention[,] and prison conditions" (citations and quotation marks omitted)); *Jiminian* v. *Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (observing that a petition under 28 U.S.C. § 2241 "generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions" (citations omitted)).

In his reply brief, Mr. Sessum suggests that the Government and the Court have interpreted his request too literally, and explains that he offers BOP's failure to account properly for his time credits as an extraordinary and compelling circumstance meriting compassionate release. (Dkt. #656-1 at 4-6). To the extent that Mr. Sessum's time credit issues are presented a standalone basis for compassionate release, the Court does not believe that it is appropriate to consider them under § 3582(c)(1)(A)(i), given the availability of 28 U.S.C. § 2241 as a remedy.[2] That said, even if credit calculation issues could suffice as an extraordinary and compelling reason, alone or in combination with Mr. Sessum's other arguments for compassionate release, the Court denies the request on the twin bases that it does not believe Mr. Sessum has demonstrated an extraordinary and compelling reason for such relief, and that the grant of such relief would contravene the factors set forth in 18 U.S.C. § 3553(a).

---

[2] *Cf. United States* v. *Amato*, 48 F.4th 61, 65 (2d Cir. 2022), *cert. denied sub nom. Orena* v. *United States*, 143 S. Ct. 1025 (2023):

> To impose a sentence, there must necessarily be a valid conviction. If a defendant contends his conviction by a federal court is invalid, Congress has provided a vehicle to raise such a challenge through a motion pursuant to 28 U.S.C. § 2255, which imposes particular procedural limitations. A defendant cannot evade this collateral review structure by attacking the validity of his conviction through § 3582. Accordingly, we conclude, arguments challenging the validity of an underlying conviction cannot be raised in a § 3582 motion as part of the § 3553(a) sentencing factors. Rather, such arguments are properly raised on direct appeal or collateral review pursuant to 28 U.S.C. § 2255.

## CONCLUSION

For the foregoing reasons, Defendant Maurice Sessum's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 645.

    SO ORDERED.

Dated:  May 9, 2023
          New York, New York

                                        KATHERINE POLK FAILLA
                                        United States District Judge